John C. Babcock, petitioner.

No. 07-P-384.

Middlesex. December 11, 2007. - May 8, 2008.

Present: Cowin, Brown, & Kafker, JJ.[1]

*Habeas Corpus. Practice, Criminal,* Sentence, Execution of sentence.

A Superior Court judge properly dismissed the prisoner's petition for a writ of habeas corpus, where the prisoner, who was currently incarcerated in a State correctional facility after having served Federal sentences, was unable to establish that he was entitled to immediate release, in that the record demonstrated that the State sentencing judge intended that the State prison sentences be served from and after completion of the prisoner's Federal prison sentences in the aggregate, and not concurrently with any portion of the Federal sentences. [691-695]

Petition filed in the Superior Court Department on August 24, 2006.

The case was heard by *Thomas R. Murtagh,* J.

*Charles Anderson, Jr.,* for the respondent.

*John C. Babcock,* pro se.

Cowin, J. The petitioner, John C. Babcock, a prisoner presently incarcerated at the Massachusetts Correctional Institution at Concord, appeals from the denial by a judge of the Superior Court of his petition for a writ of habeas corpus. He raises a question regarding the interaction between certain Federal sentences and a subsequently imposed State "from and after" sentence, and the effect of that interaction on the date on which he is entitled to release from State confinement. We conclude, on this record, that the Federal sentences should be treated as an aggregated, single sentence; the State "from and after" sentence therefore did not commence to run until the petitioner was released

---

[1]Justice Cowin participated in the deliberation on this case and authored this opinion prior to his retirement.

from Federal confinement altogether; and therefore the petitioner is not yet eligible for release from State confinement. Accordingly, we affirm the order of the Superior Court denying the petition.

1. *Background.* The material facts and the prior proceedings are not disputed. On July 28, 1987, the petitioner pleaded guilty in the United States District Court for the District of Vermont to charges of kidnapping during bank robbery, see 18 U.S.C. §§ 2, 2113(a), (e) (1986); and use of a firearm during commission of a crime of violence for which a person may be prosecuted in a court of the United States, see 18 U.S.C. § 924(c)(1) (1986). He received a sentence of thirty years on the bank robbery/kidnapping charge, for which he was eligible for parole, and a consecutive sentence of five years for use of a firearm, for which he was not parole-eligible. At that time, the Federal Bureau of Prisons (bureau), by virtue of its own administrative determination, "required prisoners to serve § 924(c) non-parolable sentences before serving parolable sentences, regardless of the sequence indicated by the sentencing court." United States *vs.* Luskin, U.S. Ct. App., No 00-4846 (4th Cir. Aug. 17, 2001).

Consequently, the petitioner was deemed to be serving the five-year nonparolable sentence when, on May 3, 1988, he was sentenced on five State charges in the Superior Court.[2] He was sentenced by a judge of the Superior Court to from nine to ten years on four of the counts, and to from three to five years on the remaining count, all of the sentences to be served concurrently. Aware that the petitioner was already incarcerated in connection with the Federal convictions, the Superior Court judge directed that the State sentences take effect "from and after" the Federal sentence that had been imposed the previous year.

The respective mittimuses in the various State proceedings articulated the "from and after" directive in various ways. On the armed robbery conviction (indictment no. 82882), the mittimus stated that the petitioner would serve from nine to ten years "from and after Federal Sentence deft. is presen[tl]y

---

[2]The State charges on which the petitioner was sentenced were breaking and entering a building in the nighttime with intent to commit a felony (two counts), see G. L. c. 266, § 16; possession of burglarious instruments, see G. L. c. 266, § 49; armed robbery; and unlawful possession of a firearm, see G. L. c. 269, § 10(*a*).

serving." With respect to the unlawful possession of a firearm conviction (indictment no. 82884), the sentence was from three to five years "from and after Federal sentence deft. is presently serving imposed on 7/28/87 in Federal District Court of Vermont and concurrent with sentence in 82882." On the remaining three charges, the mittimus read in each instance that the sentence would be "from and after sentence now serving imposed on 7/27/87[3] in Federal District Court of Vermont and concurrent with" the other State sentences imposed at the same time. Thus, in each instance, the mittimus referred to a Federal sentence being served at the time of imposition of the State sentences as the point of reference from which commencement of the concurrent State sentences would take place.

In 1997, the United States Supreme Court rejected the practice of the bureau requiring that a nonparolable sentence imposed under 18 U.S.C. § 924(c) be served first, concluding that the requirement conflicted unlawfully with the statutory authority of Federal trial judges to determine the order in which sentences are to be served. See *United States* v. *Gonzales*, 520 U.S. 1, 6-8 (1997). In response, the bureau revised its policy retroactively to provide, consistent with the Supreme Court decision, that sentences would be deemed served in the sequence specified in the judgment and commitment order. This administrative change resulted in the bureau's treatment of the petitioner's commitment as commencing with the thirty-year sentence (or whatever portion thereof he actually served as a result of parole or other offsets) followed by the five-year sentence (or the portion thereof actually to be served following the application of credits).

With the thirty-year sentence being served first, the petitioner was paroled from that sentence on February 26, 2003, at which time he began serving the five-year sentence. He was released from that sentence on May 4, 2006, and was transferred to the custody of the Department of Correction (department) to commence serving the State sentences. The department recorded his expected release date as January 17, 2009.[4] Shortly after his transfer to State custody, the petitioner commenced the present

---

[3]The references to July 27, 1987, rather than to July 28, 1987, as the date of the Federal sentences appear to be a scrivener's error.

[4]At the time of imposition of the State sentences, the petitioner was entitled

proceeding by filing a petition for a writ of habeas corpus alleging that the State sentencing judge had intended that the concurrent sentences he imposed in 1988 would commence "from and after" the five-year sentence that the petitioner was then deemed to be serving, and run concurrently with the thirty-year sentence (then thought to be the subsequent sentence).[5] On this theory, the petitioner's State sentences would have been completed in 1996, his Federal sentences would have been completed when he was paroled from the subsequent thirty-year sentence, and he would therefore be eligible for immediate release from State custody. See *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 386 (1983).

The petitioner thereafter filed a motion for summary judgment. The department filed no response to that motion, but did file an opposition to the petition asserting that the petition should be dismissed because (1) the petitioner's previously filed motion to revise and revoke constituted a pending prior action under Mass. R.Civ.P. 12(b)(9), 365 Mass. 755 (1974); (2) the petition was filed in the wrong venue; and (3) relief should have been sought under Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001). The motion judge rejected each of these contentions, we believe correctly, and the department has not appealed.

The department addressed the merits of the petition in a supplemental opposition wherein it asserted for the first time that the petitioner's release date with respect to the State sentences was not January 17, 2009, but instead was March 12, 2012. This was based on the department's view that the State sentences could commence only after the petitioner had served both Federal sentences[6] because, among other things, the State sentencing judge had not stated explicitly that the State sentences were to be served

_____

to good time credits. See G. L. c. 127, § 129. That statute was repealed by St. 1993, c. 432, § 10, effective July 1, 1994, but those sentenced prior to the statute's repeal remained eligible for such credits. Compare *Commonwealth* v. *Azar,* 444 Mass. 72, 78 (2005).

[5]In this way, the petitioner reasons, the State sentencing judge ensured that the State sentences would run concurrently with the thirty-year sentence and thus would not add any time of confinement to that already imposed by the Federal sentencing judge.

[6]The department had previously calculated the petitioner's release date on the assumption that the State sentences would commence once the first Federal sentence to be served (by this time, the thirty-year sentence) had been completed.

concurrently with any portion of the Federal sentences, thereby requiring that the date of commencement of the State sentences be changed from February 26, 2003 (the date of release from the thirty-year Federal sentence) to May 4, 2006 (the date of release from the five-year Federal sentence).

The motion judge denied both the petitioner's motion for summary judgment and his petition, while allowing the department's motion to dismiss on the merits (as opposed to the procedural objections, which the judge had rejected). In doing so, he stated in dictum that the Federal sentences imposed on the petitioner in 1987 appeared to be interdependent, and therefore should be aggregated for the purpose of determining commencement of the State sentences. In the final analysis, however, he based his ruling exclusively on the proposition that, whether the Federal sentences were viewed in the aggregate, or only service of the thirty-year sentence was considered, the State sentences would have commenced at the earliest in February, 2003. If so, the petitioner's presumptive release date would take place in January, 2009, he was not presently eligible for immediate release, and a writ of habeas corpus could not issue.

2. *Discussion.* We agree with the motion judge that the petitioner is not entitled to a writ of habeas corpus. We reach this conclusion without reference to the order in which his Federal sentences should be deemed to have been served, a question we need not decide, because we conclude in any event that the State sentences were intended to be served from and after completion of the Federal sentences in the aggregate.[7] The remedy of habeas corpus is available to those individuals who contend that "the term of a lawfully imposed sentence has expired." *Stewart, petitioner,* 411 Mass. 566, 568 (1992), quoting from *Averett, petitioner,* 404 Mass. 28, 31 (1989). To be entitled to issuance of the writ, a petitioner must establish that he is entitled to an immediate release from confinement, and that therefore further incarceration of him is unlawful. See *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 851-852 (1982). Because the petitioner was unable to demonstrate that he was entitled to immediate relief, his petition was correctly denied.

---

[7]This obviously eliminates any need to consider the legality of the bureau's retroactive switching of the Federal sentences after the Supreme Court's decision in *United States* v. *Gonzales,* 520 U.S. 1 (1997).

In arriving at our conclusion, we address the related questions whether the Federal sentences are to be aggregated for the purpose of determining the date of commencement of the State sentences, and whether the State sentencing judge intended that the State sentences be served "from and after" the aggregated Federal sentences or after service of the first Federal sentence (thereby running concurrently with the second Federal sentence).

At the time of the petitioner's Federal convictions, 18 U.S.C. § 924(c)(1) provided that "[w]hoever, during and in relation to any crime of violence . . . , including a crime of violence . . . which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years." See Pub. L. 99-308, § 1(b), 100 Stat. 449 (1986). The statute has been interpreted to require "*an aggregate sentence some five years longer than that which would result from the underlying . . . offense*" (emphasis added). *United States* v. *Davis*, 112 F.3d 118, 121 (3d Cir.), cert. denied, 522 U.S. 888 (1997). While the United States Supreme Court has determined that the statute creates a separate offense distinct from the underlying felony, thereby ultimately requiring a fact finder to decide whether the elements necessary to warrant conviction have been satisfied, see *Castillo* v. *United States*, 530 U.S. 120, 124 (2000), the decision was not intended to alter the purpose of the statute, i.e., to provide a penalty additional to the sentence imposed for the underlying offense.

Thus, the long-standing view of the Federal courts that sentences imposed under § 924(c) and an underlying felony should be seen as "interdependent" or a "package" remains intact. See *United States* v. *Diaz*, 834 F.2d 287, 290 (2d Cir. 1987), cert. denied, 488 U.S. 818 (1988), quoting from *McClain* v. *United States*, 676 F.2d 915, 918 (2d Cir.), cert. denied, 459 U.S. 879 (1982) ("[c]onsecutive sentences were mandatory in this case under section 924[c] and the sentences were truly interdependent"); *United States* v. *Russell*, 917 F.2d 512, 513 (11th Cir. 1990), cert. denied, 499 U.S. 953 (1991) (imposition of aggregate sentence for § 924[c] and underlying felony violation); *United*

*States* v. *Easterling*, 157 F.3d 1220, 1223 (10th Cir. 1998), quoting from *United States* v. *Mendoza*, 118 F.3d 707, 710 (10th Cir.), cert. denied, 522 U.S. 961 (1997) (§ 924[c] conviction and underlying felony conviction were "interdependent and resulted in an aggregate sentence, not sentences which may be treated discretely").

The petitioner is not helped by *Simpson* v. *United States*, 435 U.S. 6, 10 (1978), notwithstanding the statement in that case that "§ 924(c) creates an offense distinct from the underlying . . . felony." The reasoning in the *Simpson* decision, i.e., that Congress did not intend that a defendant be given a sentence under § 924(c) in addition to a sentence enhancement penalty already required for commission of the underlying felony, *id.* at 12-13, was rejected by Congress in a subsequent amendment to § 924(c) establishing that Congress did indeed intend for both enhancing sentences to be imposed. See *United States* v. *Gonzales*, 520 U.S. at 10 (by enacting the "Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 1005[a], 98 Stat. 2138-2139[,] . . . Congress . . . repudiated the result we reached in . . . *Simpson* . . ."). In any event, as set forth in detail above, the fact that the offenses are treated as distinct crimes does not preclude treatment of the sentences as interdependent.

Once we are satisfied, which we are, that the Federal sentences imposed in 1987 are to be considered interdependent and aggregated, we are in turn persuaded that the State judge imposing sentences in 1988 intended that those sentences be served "from and after" the total of the aggregated Federal sentences. At no time did the judge state, nor was it stated in any mittimus, that he intended that any portion of the State sentences be served concurrently with any portion of the Federal sentences. The word "concurrent" appears in the State sentencing dispositions only in connection with the other State sentences. Had it in fact been the State judge's intention to confer on the petitioner the benefit that he posits, i.e., that his incarceration pursuant to the State sentences not exceed the time he would serve under the Federal sentences, the judge would surely have so indicated by identifying expressly in what way the Federal and State sentences would operate concurrently. That he referred only to the Federal "sentence" in the singular suggests to us only that

he perceived the thirty-year sentence and the five-year enhancement to be a single sentence for his purposes. See *Carlino* v. *Commissioner of Correction*, 355 Mass. 159, 161 (1969) (sentencing judge's use of singular form of "sentence," reasonably construed, referred to plural form where sentences were for all practical purposes one sentence).[8]

The petitioner's reliance on G. L. c. 279, § 8A, is misplaced. The statute provides in relevant part: "For the purpose only of determining the time of the taking effect of a sentence which is ordered to take effect from and after the expiration of a previous sentence, such previous sentence shall be deemed to have expired when a prisoner serving such previous sentence shall have been released therefrom by parole or otherwise." The purpose of the statute is the elimination of possible gaps between consecutive sentences when the prior sentence ends with a parole. See *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 723-724 (1958); *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 136 (1975) ("[I]t is evident from the legislative history that § 8A was aimed only at ensuring that a prisoner would not be freed from custody for the remainder of the term of one sentence only to be reincarcerated at the end of the term in order to serve a second sentence imposed 'from and after the expiration' of the first"). The statute has no bearing on the issues in the present case.

For similar reasons, *Henschel* v. *Commissioner of Correction*, *supra*, is of no assistance to the petitioner. That case involved three separate sentences imposed on three different dates, and a determination by the Supreme Judicial Court that the third sentence was to be served from and after the first sentence because that was the sentence that the prisoner was "now serving." *Id.*

---

[8]In reaching this conclusion, we do not rely on the affidavit of the assistant district attorney who represented the Commonwealth at sentencing, wherein she states that the only document that "would have been" before the State sentencing judge was a "certificate of inmate status" from the bureau that identified the term of the petitioner's commitment as thirty-five years. That certificate appears to have been used by the bureau in connection with parole eligibility, and sheds little light on whether the State sentencing judge viewed the Federal sentences as aggregated. Likewise, even if we credit (in the absence of a transcript) the representation of the petitioner that he explained to the judge that his Federal sentences were separate, we have no basis for assuming that the judge was persuaded.

at 132-133. The holding is irrelevant to sentences that have been aggregated, which, as set forth above, is the case here. Contrast *Baranow* v. *Commissioner of Correction*, 1 Mass. App. Ct. 831, 832 (1973).

3. *Conclusion.* Because, for the reasons stated, the petitioner is not entitled to immediate release from State custody, his petition for a writ of habeas corpus was correctly dismissed.

*Order denying petition affirmed.*